'IN THE UNITED STATES DISTRICT COURT
MIDDLE TENNESSEE

FILED
1:42 pm
2012 DEC 26

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

|  |  |  |
|---|---|---|
| ANNE A. SEARS | ) | CIVIL ACTION NO. |
|  | ) | 3  12  1322 |
| Plaintiff, | ) | COMPLAINT |
|  | ) |  |
| v. | ) | JURY TRIAL DEMAND |
| JO-ANN STORES, INC. | ) |  |
|  | ) |  |
| Defendant, | ) |  |

## NATURE OF ACTION

This is an action under Title VII of the Civil Rights Acts of 1964, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on religion, age, race and ethnic origin, and to provide appropriate relief to Anne A. Sears. ("Sears")who was adversely affect by such practices. Plaintiff, alleges that defendant, Jo-Ann Stores, Inc., ("Defendant") knowingly and intentionally subjected Sears to both slanderous and libelous comments regarding her work, competence, efficiency, professionalism and veracity, and implemented and conducted malicious practices which were designed and resulted in denying career advancement and promotions to Sears. Further, Sears alleges that when she objected to such treatment, Defendant retaliated by slashing her hours and subjecting her to hyper vigilance and scrutiny and inequitable application of company rules resulting in write ups which other associates have not and would not have received.

## JURISDICTION AND VENUE

1. Jurisdiction of this court is invoked pursuant to 28 U.S.C. " 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) and Title

1

VII of the Civil Rights Act of o 1964, as amended, 42 U.S. C. ' 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C., ' 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for Middle Tennessee.

## PARTIES

3. Plaintiff, Anne A. Sears, pro se and brings this action on her behalf.

4. At all relevant times, Defendant has continuously been a corporation doing business in the state of Tennessee in Franklin, and has continuously had at least 15 employees. Defendant operates a fabric and crafts retail company.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g), and (h) of Title VII, 42 U.S.C. " 2000e(b),(g), and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Sears filed a charge with the Commission alleging violation of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least October 2007, Defendant engaged in unlawful employment practices at its Cool Springs, Franklin, Tennessee retail store (hereinafter "the jobsite"), in violation of Section 703(a)(1) of Title VII, 42 U.S.C. ' 2000e-2(a)(1), as follows:

    a. Defendant hired Sears as a part time seasonal employee October 21, 2006. Her principal duties were related to working at the cutting counter, however she was also trained and given a required background screening to cashier.

    b. Upon Sears hire she requested that she not work Sundays. She informed the

2

store manager that Sunday was a very important day and that she whould like to avoid working it if at all possible. The store manager responded that she would do what she could. Instead of making some accommodation, Sears was assigned every Saturday and Sunday. Usually, unless a person requests to work exclusively weekends, accommodation is made so that no one has to work both days of a weekend. Sears in retaliation for requesting Sunday off for religious reasons, was assigned every Saturday and Sunday. Sears made several more requests, stating that she had religious reasons for not working on Sunday. Again, she was assigned every Sunday. Finally, Sears filled out a form officially requesting that she not work Sunday.

    c.     Many employees have been permitted to place restrictions on their hours without having to make an official written request. This has been true for employees with transportation issues, employment, school, numerous considerations. Yet, when Sears requested that she not work Sundays, no accommodation was made, and in fact, as retaliation, she was assigned every Sunday.

    d.     Most employees who file availability forms get the exact number of hours requested. They may have numerous restrictions on their availability but suffer no consequence related to the hours they are given and time slot.

    e.     Sears has had for the past 5 years, only one restriction, which is not to work on Sunday. Yet, she will be one of the first to get the worst hours and the least despite her longevity and superior work ethic.

    f.     Finally forced to file a formal request for Sunday off, her hours were substantially dropped. Sears was not offered other types of work, such a stocking, hard lines recovery or cashiering. She was told that her hours were slashed because she refused to work on Sunday.

    g.     Sears has been assigned every Friday night (which is the beginning of the

3

weekend and every Saturday for the past six years less nor more than five days as a consequence of her requesting Sunday off for religious purposes.

    h.    New hires with restricted schedules have frequently bumped Sears from her routine hours taking her hours and time slots. Part time employees with the same longevity as Sears have worked the same hours virtually unaltered for the same amount of time. When Sears objects, it is because she refuses to work on Sunday.

    i.    Sears has more than 30 cut aboves (awards given from customers for exceptional assistance), has called out only three times, is routinely and habitually, on time, dressed and ready to work. Furthermore, Sears is a conscientious and hard working employee who is required to work one of the hardest positions at the store, outside of the framing department, in the home decorating department. In this department, she is required to assist the customer in the calculation of drapes, upholstering needs and other things typically made related to home decorating such as pillows, cornice boards roman shades etc. Sears also assists customers in color selection and is sufficiently familiar with her stock to point out fabrics within the customer taste and colors. Sears is also required to carry very heavy bolts. Sears works solely home decor and alone. Over her six years at home decor Sears has successfully assisted thousands of customers.

    j.    Not less than four times, a position has opened up and, the managers have created a disciplinary charge forcing Sears to be excluded from applying for a position. All disciplinary notes received by Sears have occurred just before a job interview or before a job announcement.

    k.    Alternatively, certain persons will have their hours changed to work tasks which in a job announcement made shortly after, are required in the job description--disqualifying Sears from applying.

l.   In one interview Sears was informed that although she had done a task for JoAnn that it was not recent, to be considered, she would have to have done the task within the past three months or so. Of course, the practice and process of the task had not changed, just the fact that Sears had not done it recently disqualified her.

m.   One example of the gross bias practiced against Sears is related to stocking patterns. The apparel cutting counter is responsible for stocking patterns primarily because most of the patterns are related to making clothes not home decor. The patterns are in the apparel section. The number of employees at the apparel cutting counter was increased substantially to six people, one reason being to stock the patterns. The cutters at apparel objected to having to stock the patterns and Sears was told to do it. The patterns had not been stocked for more than a week. When Sears objected, she was written up and given the JoAnn job description which said that she was responsible for doing everything and anything in the store. No consequence was suffered by the employees working apparel who first objected to stocking the patterns. This write up excluded Sears from a job interview.

n.   Sears brought her complaint all the way to the Vice President of Human Resources at Defendants' corporate office and was told they saw no problem in the treatment she has received.

o.   On Christmas eve, 2012, two birds flew into the store. The store manager saw them and made a comment. Sears stated the birds seem to be hovering around home dec. The store manager responded "well, at least you have two friends."

p.   Two cutters were talking to each other while a customer was present. The conversation greatly offended the customer and she complained to the manager of marketing. This manager when telling Sears about the incident laughed and said she gave the customer a

5

25% discount on her total purchase. No consequence resulted with the cutters who had clearly not been focused on customer service.

    q.    In closing, Sears is responsible for home dec area and then will move to apparel and help put fabric away if it is not already done. Frequently she will find the apparel cutters unsupervised and chatting stalling and wasting time to pad their hours. Instead of telling these employees, most of whom are no more than 30 to get to work, Sears is assigned their tasks. In one incident home dec had been a mess and Sears was unable to put away the apparel fabric. It was already around 10:30. Thirty minutes past scheduled closing time and Sears put the fabric in a bottle cart and pushed it toward apparel. One of the cutters who was not doing anything, yelled at Sears and demanded she put the fabric away. Even though Sears was still working on home dec the manager took the cutter's side and also yelled at Sears to put the fabric away. Sears indicted that she was still working on home dec and the manager furious, yelled at her to forget about home dec and put the fabric away. Three cutters came out from someplace and when the manager realized that the only fabric that had to be put away was in the bottle cart and that not one but three cutters had been doing nothing while Sears closed home dec., he ordered everyone including Sears to put the fabric away. He stated that after the fabric in the bottle cart was put away we would go home. Sears objected because as she had been assigned home dec, consequences fell on her if it was left in a mess, and the District Manager was schedule to come for a visit the next morning. Still furious, the manager said to Sears "you either put the fabric away or leave." Sears left. She was written up. There was no correction to the apparel cutters that they should have let someone know they were finished in order to help in home dec or elsewhere. Sears is the one who was written up for trying to get her assigned work completed.

    r.    Several managers have no problem in disparaging Sears' reputation and stating

6

that she has had "numerous customer complaints." Yet, Sears will be the one assigned tasks they need completed and well done and she will be the person they refer a customer to who has a difficult question. Their words are not consistent with their actions, and they are knowingly and intentionally slandering her reputation. Further, this slander has been written on reports and responses to complaints making their deliberate and knowing harm to her reputation both libelous and slanderous.

8. Despite her exemplar work, after 6 years, Sears has been denied or failed to be informed of any and all promotional opportunities and is still a part time employee. There is no one at the store who has as broader knowledge of the crafts and fabrics than Sears does, although there are several who know more than her in specific fields. Sears has been knitting since she was 10, sewing since she was 14, built her own dinner table and burned Celtic knot work into the top, makes her own jewelry, created a baby line with plaster of paris magnets, enjoys painting with water colors and pastels, spins and weaves, worked with multi media art, has done some framing, and bakes. Customers have come asking her for help with knitting or construction of an idea and with Sears' help have been able to complete their task. In fact, several customers have come back to specifically thank her for her help. There is no reason why management should be so hostile to such a hard working, responsible employee. Sears believes the unlawful employment discrimination stems from the fact that she is an evangelical Christian. The hostility toward Sears began when it was discovered that she did not work on Sundays.

9. In the alternative, Sears has very curly hair and has been asked numerous times what her ethnic back ground was. One customer described Sears hair as "nappy."

10. In the alternative Sears is a 54 year old woman who has had her hours cut and altered, once again, by new hires, all of whom are under the age of 40. Sears discovered less then two

7

years ago that a copy of her I-9 passport photo had been left in her employee file at the store.

11. Over the past six years a clear habit and routine has developed showing the Defendant has knowingly and intentionally participated in these unlawful employment practices complained of above.

10. The unlawful employment practices complained above were done with malice or with reckless indifference to the federally protected rights of Sears.

PRAYER FOR RELIEF

Wherefore, Sears respectfully request that this Court:

A. Grant a permanent injection enjoining Defendant, its officers, successors, and assigns, and all person in an action concert or participation with them from maintaining a hostile work environment base on religion, age or race or engaging in any other employment practice that discriminates on the basis of age, race and ethnic origin and from retaliating against employees who oppose practices made unlawful by Title VII.

B. Order Defendant to make Sears whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices, including but not limited to advancement of promotional opportunities denied to Sears because of Defendant's discriminatory practices and front pay.

E. Order defendant to make Sears whole by providing compensation for or past and future pecuniary losses resulting from the unlawful employment practices described above including but not limited to medical expenses, in amounts to be determined at trial.

F. Order Defendant to make Sears whole by providing compensation for or past and

8

future non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

G.   Order Defendant to pay Sears punitive damages for its malicious and reckless conduct describe above, in amounts to be determined at trial.

H.   Grant such further relief as the Court deems necessary and proper in the pubic interest.

I.   Award Sears her costs of this action.

### JURY TRIAL DEMAND

Sears requests a jury trial on all questions of fact raised by its complaint.

DATED this the 26th day of December, 2012.

```
ANNE A. SEARS, Pro Se
1019 Boxwood Drive,
Franklin, TN   37069
```