IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ANNE A. SEARS             )
                          )
v.                        )   No. 3:12-1322
                          )
JO-ANN STORES, INC.       )


TO:    Honorable Kevin H. Sharp, District Judge


# REPORT AND RECOMMENDATION

By Order entered January 31, 2013 (Docket Entry No. 9), this action was referred to the Magistrate Judge for management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is the Defendant's motion for summary judgment (Docket Entry No. 36), to which the plaintiff has responded in opposition. See Docket Entry Nos. 42-43. Set out below is the Court's recommendation for disposition of the motion.


## I. BACKGROUND

The plaintiff is employed by Jo-Ann Stores, LLC ("Jo-Ann"), as a part-time retail employee in Jo-Ann's Cool Springs store located in Williamson County, Tennessee. She has been continuously employed at Jo-Ann since 2006. On March 11, 2011, she filed a charge of discrimination ("Charge") against Jo-Ann with the Tennessee Human Rights Commission alleging that she was being discriminated against based on her race, national origin, age, religion, and creed. See Docket Entry No. 39-3. The Charge contained checkmarked boxes asserting that the alleged discrimination took the form of "harassed/intimidated," "retaliated against," "demoted," "failure to hire," "failure to promote," "denied benefits (leave, insurance, etc.)," and "denied religious

accommodation," and included a single page narrative of events that had occurred. Id. On September 21, 2012, the U.S. Equal Employment Opportunity Commission ("EEOC") issued the plaintiff a right-to-sue letter after finding that the information she had provided did not support her allegations of discrimination. See Docket Entry No. 8-1, at 1.

On December 26, 2012, the plaintiff filed the instant action against Jo-Ann under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), and under Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title I"). The plaintiff asserts that the action was brought "to correct unlawful employment practices based on religion, age, race, and ethnic origin, and to provide appropriate relief." See Complaint (Docket Entry No. 1), at 1. She alleges that:

> [Jo-Ann] knowingly and intentionally subjected [her] to both slanderous and libelous comments regarding her work, competence, efficiency, professionalism and veracity, and implemented and conducted malicious practices which were designed and resulted in denying career advancement and promotions to [her]. Further, [she] alleges that when she objected to such treatment, [Jo-Ann] retaliated by slashing her hours and subjecting her to hyper vigilance and scrutiny and inequitable application of company rules resulting in write ups which other associates have not and would not have received.

Id.

The plaintiff alleges that her informal requests to not work on Sundays were ignored until she filled out a formal written request, despite the fact that informal requests are routinely approved for other employees and, further, that she was scheduled for fewer and less desirable work hours after making the formal request to not work on Sundays. Id. at 3-4. The plaintiff also alleges that she has received undeserved disciplinary write-ups, has been treated unfairly compared to other employees, and has been disparaged by her managers. Id. at 4-7. With respect to advancement opportunities at Jo-Ann, the plaintiff alleges that she has been excluded from interviewing for promotions or other open positions within Jo-Ann because of the disciplinary write-ups, id. at 4-5, and "has been denied or failed to be informed of any and all promotional opportunities and is still a part time employee." Id. at 7. According to the plaintiff:

> the unlawful employment discrimination stems from the fact that she is an evangelical Christian. The hostility toward [her] began when it was discovered that she did not work on Sundays.
>
> In the alternative, [she] has very curly hair and has been asked numerous times what her ethnic back ground was. One customer described [her] hair as "nappy."
>
> In the alternative, [she] is a 54 year old woman who has had her hours cut and altered, once again, by new hires, all of whom are under the age of 40. [She] discovered over two years ago that a copy of her I-9 passport photo had been left in her employee file at the store.

Id. at 7-8.

Upon the Defendant's filing an answer (Docket Entry No. 14), a scheduling order (Docket Entry No. 15) was entered setting out deadlines for pretrial activity in the action. By Order entered June 17, 2013 (Docket Entry No. 21), the action was stayed upon the motion of the plaintiff because of her medical issues. By Orders entered September 27, 2013 (Docket Entry Nos. 26 and 27), respectively, the stay was lifted and a revised scheduling order was entered.

## II. MOTION FOR SUMMARY JUDGMENT

The Defendant contends that it is entitled to summary judgment as a matter of law on all claims raised by the plaintiff. The Defendant asserts that Title I does not provide for a private cause of action and that the plaintiff failed to plead in her complaint that she was pursuing a statutory claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, et seq. ("ADEA") despite setting out specific statutory bases for her other claims. The Defendant further contends that the applicable statute of limitations bars any Title VII claims based on events occurring more than 300 days prior to the March 11, 2011, Charge, that the plaintiff's Title VII claims of discrimination and retaliation and her claim for defamation, as well as an age discrimination claim if it had been properly pled, are not supported by an evidentiary basis. The Defendant supports its motion with a Statement of Undisputed Material Facts (Docket Entry No. 38), excerpts from the plaintiff's deposition (Docket Entry No. 39-1), the plaintiff's written discovery responses (Docket Entry No. 39-2), documents attached to and in response to the plaintiff's Charge (Docket Entry Nos. 39-3

and 39-4), and the sworn declarations and attached exhibits of Charles McElhannon (Docket Entry No. 40) and Kathy Scadden (Docket Entry No. 41).

In response to the motion for summary judgment, the plaintiff contends that: 1) consideration of the Defendant's motion should be stayed as premature until the completion of discovery and until a ruling on her pending motion to compel discovery (Docket Entry No. 31); 2) that factual disputes exist as evidenced and supported by her affidavit; and 3) that the excerpts from her deposition should be stricken because the full deposition was not provided. See Docket Entry No. 42. The only evidentiary support for the plaintiff's response is her unsworn "Affidavit." See Docket Entry No. 43, at 7-30. As part of her response, the plaintiff also moves for leave to file an amended complaint. See Docket Entry No. 46.

### III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

4

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## IV. CONCLUSIONS

A. Motions to Strike

Both parties have moved to strike filings made by the opposing party regarding the pending summary judgment motion. See Docket Entry Nos. 42 and 44. The plaintiff has moved to strike as irrelevant the Defendant's filing of a copy of a motion she filed to appear "pro hoc vici" in 2008 in another case filed in this District (Docket Entry No. 39-5), which the Defendant filed in support of its argument that the plaintiff, although proceeding pro se, is an attorney whose filings should not

5

be afforded the liberal review typically provided to pro se litigants. The Defendant has moved to strike and seal the plaintiff's "Affidavit," which she filed in opposition to the motion for summary judgment, because it is unsworn and contains "unsupported, immaterial, impertinent and scandalous allegations regarding non-parties that invade the privacy of those individuals." See Docket Entry No. 44.

By contemporaneously entered Order, the Court has denied both motions. Although the Court has considered the parties' arguments regarding the filings at issue in its review of the summary judgment motion, the Court finds no basis for striking the filings. The Court is able to sift through the evidence submitted by the parties and make determinations about the admissibility, relevance, and weight of the evidence without the need to strike the evidence from the record. See Dunavant v. Frito Lay, 2013 WL 816673, *5 (M.D. Tenn. Mar. 5, 2013) (Sharp, J.); Berry v. Frank's Auto Body Carstar, Inc., 817 F.Supp.2d 1037, 1041-42 (S.D. Ohio 2011) (footnote omitted) ("a Court should ignore inadmissible evidence instead of striking it from the record"); LuJan v. Southwest Airlines Co., 2008 WL 4791490, *6 (M.D. Tenn. Oct. 28, 2008) (Echols, J.) (noting that motions to strike are disfavored, but considering plaintiff's affidavit only to the extent that it was based on personal knowledge, set forth facts which would otherwise be admissible in evidence and did not directly contradict prior deposition testimony). In addition, the Defendant has not shown any basis for sealing the plaintiff's response and "Affidavit."

B. The Plaintiff's Pro Se Status

The plaintiff filed this action pro se. However, she is an attorney, albeit one who apparently has not practiced since 2000 and no longer has an active license. See Docket Entry No. 43, at 5. Even though the plaintiff no longer practices law and professes to have no experience in the areas of the law at issue in this case, she is nonetheless a trained attorney. As such, the Court declines to afford to the plaintiff the measure of leniency and liberal construction that is typically afforded to litigants who are untrained in the law and proceed in litigation without the benefit of an attorney.

See Godlove v. Bamberger, Foreman, Oswald, & Hahn, 903 F.2d 1145, 1148 (7th Cir. 1990); Harbulak v. County of Suffolk, 654 F.2d 194, 198 (2nd Cir. 1981); Fenner v. City of New York, 2009 WL 5066810, *3 (E.D.N.Y. Dec. 21, 2009); Richards v. Duke Univ., 480 F.Supp.2d 222, 234 (D.D.C. 2007). See also Andrews v. Columbia Gas Transmission Corp., 544 F.3d 618, 633 (6th Cir. 2008) (district court did not err by refusing to afford special solicitude to a practicing lawyer who was proceeding pro se).

C. Proposed Amended Complaint

On March 21, 2014, the plaintiff moved for leave to file an amended complaint and attached a 47 page proposed amended complaint (Docket Entry No. 46-1). The plaintiff contends that the amended complaint should be allowed because the "case is still in its infancy and [the Defendant has] yet to provide requested discovery documents" and that the amended complaint "clarifies claims against the Defendant, adds several common law claims available in Tennessee, and addresses issues raised in Defendant['s] motion for summary judgment." See Docket Entry No. 46. The Defendant opposes the motion for leave to amend arguing that the proposed amendment is untimely, unduly prejudicial, and a dilatory attempt to circumvent the Defendant's pending motion for summary judgment. See Defendant's Memorandum in Opposition (Docket Entry No. 48). The plaintiff has filed a reply to the Defendant's response. See Docket Entry No. 50.

The motion for leave to amend should be denied. Contrary to the plaintiff's assertion, this case is not in its "infancy." The initial complaint was filed on December 26, 2012, and, after the Defendant filed its answer, a scheduling order was entered on March 22, 2013, that set out discovery and other deadlines, including a deadline of May 22, 2013, for the parties to move to amend the pleadings. See Docket Entry No. l5, at 2. The May 22, 2013, deadline passed prior to the plaintiff's filing her motion for an abeyance on May 24, 2013. Once the stay was lifted on September 27, 2013, a revised scheduling order was entered that set out another set of deadlines, including a deadline of

7

December 6, 2013, for the parties to move to amend the pleadings and a discovery deadline of January 13, 2014. See Docket Entry No. 26, at 2.

The plaintiff contends that, in accordance with Rule 15(a)(2), leave to amend "should be freely given." See Rule 15(a)(2) of the Federal Rules of Civil Procedure. However, when the Court has issued a scheduling order establishing deadlines for filing any motion to amend, the "schedule may be modified only for good cause and with the judge's consent." Rule 16(b)(4) of the Federal Rules of Civil Procedure. The Sixth Circuit expressly addressed the intersection between Rule 15(a) and Rule 16(b) in Leary v. Daeschner, 349 F.3d 888 (6th Cir. 2003), in which the Court made it clear that "[o]nce the scheduling order's deadline passes, a [party] first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." 349 F.3d at 909. The Court also explained that a party seeking to file a motion to amend after the deadline must show that "despite their diligence they could not meet the original deadline." Id. at 907. See Korn v. Paul Revere Life Ins. Co., 382 Fed.Appx. 443, 449 (6th Cir. June 25, 2010); Shane v. Bunzl Distribution USA, Inc., 275 Fed.Appx. 535, 536 (6th Cir. Apr. 30, 2008); Leffew v. Ford Motor Co., 258 Fed.Appx. 772, 777 (6th Cir. Dec. 14, 2007). This District has consistently followed Leary. See Interstate Packaging Co. v. Century Indem. Co., F.R.D. , 2013 WL 1332804 (M.D. Tenn. Mar. 28, 2013) (Trauger, J.); Stewart v. King, 2011 WL 237678 (M.D. Tenn. Jan. 24, 2011); Youngblood v. Prudential Ins. Co., 706 F.Supp.2d 831 (M.D. Tenn. 2010) (Campbell, J.).

In addition, when a party seeks to amend in the late stages of a case, the moving party bears "an increased burden to show justification for failing to move earlier." Wade v. Knoxville Utils. Bd., 259 F.3d. 452, 459 (6th Cir. 2001). See also Bridgeport Music, Inc. v. Dimension Films, 383 F.3d 390, 403 (6th Cir. 2004); Leary, supra; Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002); Parry v. Mohawk Motors of Mich., Inc., 236 F.3d 299, 306-07 (6th Cir. 2000); Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999).

Although the proposed amended complaint is based on facts that were known to the plaintiff at the time she filed the original complaint and on new legal claims that could have been pled in the original complaint, her request to amend comes approximately 15 months after she filed her original complaint and well after the expiration of the two scheduling order deadlines set by the Court for moving to amend the pleadings. The plaintiff did not act diligently or promptly to amend her complaint and has not shown good cause to permit the proposed amendment. See Leary, 349 F.3d at 905-09; Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998). Further, allowing the plaintiff to amend her complaint adding new factual allegations, new claims, and new legal theories after the expiration of two deadlines for motions to amend the pleadings, after the deadlines for the completion of discovery, and after the Defendant's filing of the pending motion for summary judgment is clearly prejudicial to the Defendant. See Priddy v. Edelman, 883 F.2d 438, 446 (6th Cir. 1989). The plaintiff has not shown good cause for her failure to comply with the Court's scheduling order deadlines and for her failure to promptly move to amend her complaint. Given this failure and given the prejudice caused to the Defendant by allowing an amendment at this stage of the proceedings, the motion for leave to amend should be denied. See Salyers v. City of Portsmouth, 534 F. App'x 454, 461 (6th Cir. Aug. 21, 2013); Leary, supra; Duggins, supra; Priddy, supra.

D. Pending Discovery Motion by the Plaintiff

Prior to the Defendant's filing its motion for summary judgment, the plaintiff filed a motion to compel discovery from the Defendant and for a stay of the scheduling order until the discovery dispute was resolved. See Docket Entry No. 31. One of the plaintiff's subsequent arguments opposing the motion for summary judgment was that the motion for summary judgment was premature given the pending discovery dispute and that she had not been provided with the discovery she needed to respond to the motion for summary judgment. See Docket Entry No. 42.

By contemporaneously entered Order, the Court has denied the plaintiff's motion to compel and for a stay. As set out in that Order, the plaintiff's discovery requests were overbroad and sought

9

discovery of evidence that is not relevant to the permissible claims in this action. The plaintiff has not made a persuasive case that she is unable to present facts essential to justify her opposition to the motion for summary judgment. See Rule 56(d) of the Federal Rules of Civil Procedure.

E. Title I Claim

In addition to her claims under Title VII, the plaintiff attempts to bring her action under Title I of the Civil Rights Act of 1991, which provides a prevailing plaintiff in an intentional employment discrimination case the ability to recover compensatory and punitive damages from the defendant. See 42 U.S.C. § 1981a(a); Huckabay v. Moore, 142 F.3d 233, 241 (5th Cir. 1998). However, this statute does not create a new substantive right or an independent cause of action; rather, it enhances the remedies otherwise available for intentional employment discrimination. Id; White v. Hoeganaes Corp., 2013 WL 5346277, *2 (M.D. Tenn. Sept. 23, 2013) (Campbell, J.); O'Barr v. United Parcel Serv., Inc. , 2013 WL 2243004,*12 (E.D. Tenn. May 21, 2013); Powers v. Pinkerton, Inc., 28 F.Supp.2d 463, 472 (N.D. Ohio 1997). Accordingly, to the extent that the plaintiff intends to assert an independent claim under Title I, such a claim warrants dismissal.

F. Title VII Claims

Summary judgment should be granted to the Defendant on the plaintiff's Title VII claims. After review of the evidence submitted by the parties and the entire record in this action, the Court finds that the plaintiff's claims lack merit and no reasonable jury could find in favor of the plaintiff on her claims.

Initially, the plaintiff has not satisfied her basic obligation under Rule 56 of the Federal Rules of Civil Procedure to set forth admissible evidence showing the existence of genuine issues of material fact which require that the action proceed to trial. See Sixty Ivy St. Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987). Although the plaintiff submitted her own lengthy "Affidavit," she did not swear to the "Affidavit" nor was the "Affidavit" otherwise verified or submitted under

penalty of perjury. Factual statements must be submitted in the form of an affidavit to which the affiant has sworn, a statement submitted under the penalty of perjury in accordance with 28 U.S.C. § 1746, deposition testimony, and/or sworn answers to discovery requests. Factual statements not in these forms should be disregarded by the Court. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n.17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 969 (6th Cir. 1991). The plaintiff's "Affidavit" cannot be considered in support of her opposition to summary judgment. Given that the plaintiff's "Affidavit" is the only item of evidence that she submitted on her own behalf, she has failed to point to specific admissible evidence that supports her claims. Lujan, 497 U.S. at 888; Banks, 330 F.3d at 892.[1]

Additionally, the plaintiff's claims suffer from legal and factual shortcomings that require the grant of summary judgment to the Defendant. Although the plaintiff alleges in her complaint that she brings Title VII claims based upon race and ethnic origin, at no point in her complaint does she actually specify her race or ethnic origin. She merely alleges that she "has very curly hair and has been asked numerous times what her ethnic back ground was [and that] [o]ne customer described [her] hair as 'nappy.'" See Docket Entry No. 1, at 7, ¶ 9. The complaint contains no other allegations from which her race or ethnic origin could be inferred. The Defendant's undisputed evidence shows that the plaintiff is white with a predominantly Scottish and Native American heritage, see Docket Entry No. 38, at 1, ¶ 2, but that the plaintiff's race and ethnic origin claims are based upon her contention that customers at Jo-Ann asked her if she were Jewish or if she were black and, therefore, she may have been perceived as being a non-white or an ethnic Jew. See Plaintiff's Deposition (Docket Entry No. 39-1) at 107-114.

Such claims warrant dismissal. As a matter of law, the plaintiff has provided no legal basis supporting her "regarded as" claims under Title VII and such claims have not been recognized by

---

[1] The plaintiff objects to the Defendant's filing of excerpts from her deposition in support of its motion for summary judgment. See Docket Entry No. 42, at 2. However, the submission of deposition excerpts is not prohibited. If the plaintiff believed that other parts of her deposition supported her claims or showed that the excerpts filed by the Defendant are misleading, the plaintiff should have filed any or all of her deposition in support of her response in opposition.

the courts. See Butler v. Potter, 345 F. Supp. 2d 844, 850 (E.D. Tenn. 2004); Burrage v. FedEx Freight, Inc., 2012 WL 1068794, *5 (N.D. Ohio Mar. 29, 2012) (Title VII protects only those who are actually in a protected class, and not those who are perceived to be in a protected class). Furthermore, the plaintiff has not provided one scintilla of evidence supporting a claim that the Defendant discriminated against her based on either her actual race and/or ethnic origin or her perceived race and/or ethnic origin. Finally, comments or questions from customers to the plaintiff about her hair or ethnicity fall woefully short of supporting a claim that the Defendant discriminated against her because of her race or ethnic origin.[2]

The plaintiff's remaining Title VII claims are that she suffered religious discrimination and retaliation. One major shortcoming of these claims is that the plaintiff has not clearly identified when specific acts of discrimination occurred. This is significant because the plaintiff alleges in her complaint that the Defendant's unlawful employment practices began no later than October 2007, see Docket Entry No. 1, at 2, ¶ 7, and seeks to base her claims upon events that occurred over the period of her entire employment at Jo-Ann. However, a party must file a charge of discrimination within 300 days of the alleged discriminatory practice. 42 U.S.C. § 2000e-5(e); Amini v. Oberlin Coll., 259 F.3d 493, 498-99 (6th Cir. 2001).[3] The timely filing of an EEOC charge of discrimination is a prerequisite to a Title VII suit. 42 U.S.C. § 2000e-5(e)-(f); Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1486-88 (6th Cir. 1989). Discrete acts of discrimination about which the plaintiff was aware when they occurred must be included in a timely charge of discrimination or they are no longer actionable in a subsequent Title VII lawsuit. See Bell v. Ohio State Univ., 351 F.3d 241, 248

---

[2] The language of Title VII protects against discrimination on the basis of national origin and makes no mention of ethnic origin. Assuming that the plaintiff intended to use the correct term, there is still no merit to the plaintiff's claim, and the Court finds it unnecessary to further address whether the scope of national origin protections even encompasses a plaintiff who merely alleges that she was considered Jewish.

[3] Because Tennessee has enacted state laws prohibiting employment discrimination, it is a "deferral state" for the purposes of federal discrimination statutes. Accordingly, the plaintiff has 300 days within which to file a charge of discrimination instead of 180 days as is the case in non-deferral states. See Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 375-76 (6th Cir. 2002).

(6th Cir. 2003); Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992); Broadway v. United Parcel Serv., Inc., 499 F.Supp.2d 992, 999-1000 (M.D. Tenn. 2007) (Trauger, J.).

The 300 day limitations period begins to run when a plaintiff has knowledge of the employment decision, practice, or action at issue, not when a plaintiff becomes aware of the consequences of the act or when she believes it to be unlawful. Amini, 259 F.3d at 498-99. The plaintiff's EEOC Charge was filed on March 11, 2011. In her response to the motion for summary judgment, the plaintiff has not addressed the Defendant's timeliness argument other than to assert that it will be moot upon the filing of her amended complaint, and she has not offered any actual argument for why the 300 day limitation does not apply in her case. Accordingly, any events occurring prior to May, 16, 2010, 300 days prior to Charge, were not timely included in the Charge and cannot form the basis for a Title VII claim. Unfortunately, the plaintiff has not set forth any evidence of alleged unlawful acts that occurred within the relevant time period, and the Court is left to guess at which of the acts complained about in this lawsuit were pursued at the administrative level in a timely manner and thus are proper for consideration by this Court. These are events that involved the plaintiff and there is no reason apparent to the Court why she has not made any attempt to clarify when these events occurred in the face of the Defendant's untimeliness argument.

Another major shortcoming is that the plaintiff's complaint, as well as her attempts to expand the allegations and claims in this action, go beyond what was contained in her Charge. A Title VII plaintiff cannot bring claims in a lawsuit that were not included in the charge of discrimination. Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010). In her Charge, the plaintiff's factual narrative includes allegations that she was passed over for promotions, that she was scheduled for fewer work hours than other employees, that her manager commented about her curly hair, and that she was given an undeserved performance write-up. See Docket Entry No. 39-3. These are the permissible claims in this action. To the extent that the plaintiff seeks to pursue claims of a hostile workplace because of her religious beliefs, a lack of religious accommodation, or retaliation, these claims were not included in her Charge. Nowhere in the Charge does the plaintiff

13

allege that she was treated in a hostile manner because of her religious beliefs, that she was denied accommodations required by her religious beliefs, or that she was retaliated against in any manner. Further, the uncharged claims are distinct enough from the charged claims that the uncharged claims cannot be reasonably inferred from the facts included in the Charge nor are those facts sufficient to put the EEOC on notice and trigger investigation of the uncharged claims. Thus, these claims are subject to dismissal because they were not exhausted before the plaintiff filed this lawsuit. Younis, supra; Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 464 (6th Cir. 1998).[4]

While the plaintiff was not required to include in her Charge exact or precise legal wording regarding these claims, she must nonetheless have included some measure of the underlying factual predicates supporting her claims of a hostile workplace, a lack of religious accommodation, and retaliation. This simply was not done with respect to these three claims. Although the plaintiff checkmarked relevant boxes in her Charge, she offered no factual allegations regarding these three claims. It is the facts alleged in the body of a charge of discrimination, not the boxes checked, that is the major determinant of a charge of discrimination. See Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004).

Finally, the Court's review of the record indicates that the plaintiff's allegations fail to support a claim that she suffered unlawful acts at the hands of the Defendant. Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, or national origin." See 42 U.S.C. § 2000e-2(a)(1). Title VII further forbids an employer from "discriminat[ing] against any . . . employee[s] . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an

---

[4] Even if the plaintiff's lack of accommodation claim were included in the Charge, the facts surrounding this claim occurred in 2006 and 2007. See Docket Entry No. 38, at 4. Thus, the claim is clearly untimely.

investigation, proceeding, or hearing under [Title VII.]." 42 U.S.C. § 2000e-3(a). However, the federal civil rights laws do "not guarantee a utopian workplace, or even a pleasant one," Vore v. Indiana Bell Tel. Co., Inc., 32 F.3d 1161, 1162 (7th Cir. 1994), or require an employer to treat its employees with fairness or kindness. See Mayberry v. Endrocrinology-Diabetes Assoc., 926 F.Supp. 1315, 1324 (M.D. Tenn. 1996) (Campbell, J.). Title VII is simply not intended to redress general dissatisfaction or to remedy every workplace dispute. See White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 795 (6th Cir. 2004), aff'd Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); Barnett v. Department of Veterans Affairs, 153 F.3d 338, 342-43 (6th Cir. 1998), cert. denied, 525 U.S. 1106, 119 S.Ct. 875, 142 L.Ed.2d 775 (1999). Only when there is evidence of unlawful motives do the protections of Title VII apply.

For any disparate treatment claim, the plaintiff must show that she suffered an adverse employment action, see Mitchell v. Vanderbilt Univ., 389 F.3d 177, 185 (6th Cir. 2005); DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004), that amounted to a "materially adverse change in the terms or conditions of . . . employment" that was " more disruptive than a mere inconvenience or an alteration of job responsibilities." Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885-86 (6th Cir. 1996).[5] An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). As the Sixth Circuit explained, "[n]ot every act affecting an individual's employment can be considered an adverse employment action." McMillian v. Potter, 2005 WL 1140629, *3 (6th Cir. May 11, 2005) (citing Burlington Indus., 524 U.S. at 761).

---

[5] The plaintiff has not identified any direct evidence supporting her claims and, thus, she must satisfy the burden-shifting, evidentiary framework for cases based upon circumstantial evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1972), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981). Under this framework, the plaintiff must establish a prima facie case, one of the elements of which is the showing that she suffered an adverse employment action. Mitchell, supra.

The plaintiff complains about the amount of hours and the days for which she was scheduled as a part-time employee, about being given additional work tasks that were the duties of other employees, about being mismanaged and treated rudely, and about being given employee disciplinary reports. However, complaints of these types simply do not rise to the level of the type of adverse action required to support a claim that she was disparately treated because of an impermissible reason. See Regan v. Faurecia Auto. Seating, Inc. 679 F.3d 475, 481 (6th Cir. 2012) (employer's denial of requested work schedule was not an adverse employment action); Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 600 (6th Cir. 2007) (a plaintiff fails to show an adverse employment action based upon evidence of confrontations and harsh words from supervisor and brief placement on paid administrative leave); Birch v. Cuyahoga Cnty. Probate Court, 392 F.3d 151, 169 (6th Cir. 2004) (evidence of increased scrutiny of the plaintiff's work does not show an adverse employment action); Mitchell, 389 F.3d at 181-83 (adverse employment action not shown by evidence of a substantial reduction of lab space, revocation of mentor status, loss of a research assistant, forced review of grant applications, removal from directorship position, and non-selection for a lateral position); Agnew v. BASF Corp., 286 F.3d 307, 310 (6th Cir. 2002) (adverse employment action not shown by evidence that the plaintiff was required to comply with a performance plan); Hollins v. Atlantic Co., Inc. 188 F.3d 652, 662 (6th Cir. 1999) (a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary); Allen v. Michigan Dep't of Corr., 165 F.3d 405 (6th Cir. 1999) (adverse employment action not shown by evidence of the plaintiff's receipt of "counseling memoranda" disciplining him for specific rules infractions and evidence that he was monitored more closely than other employees).

The only allegations made by the plaintiff that generally satisfy the adverse employment action requirement are her allegations that she was denied or passed over for promotions at Jo-Ann. See White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 240 (6th Cir. 2005); Nguyen v. City of Cleveland, 229 F.3d 559, 562-63 (6th Cir. 2000). However, as already noted, the plaintiff has set

16

forth no evidence showing what specific promotions she believes she was unlawfully denied and showing that any of these denied promotions occurred within the 300 day time frame prior to her charge of discrimination, let alone evidence satisfying her burden of showing a case of unlawful religious discrimination. For example, although the plaintiff alleges in her complaint that she was not permitted to apply for an open position "not less than four times," see Docket Entry No. 1, at 4, ¶ j, she has not expounded upon this vague allegation with any specific facts showing that a viable and factually supported claim exists. It is the plaintiff's duty to present her case, support her claims, and show that summary judgment is not warranted, and the Court is not obligated to sift through the entire record on behalf of the plaintiff to determine whether or not a material factual dispute exists. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989). The plaintiff is not entitled to a trial of this claim based solely upon her vague and unsupported allegations. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989); Gregg v. Allen-Bradley Co., 801 F.2d 859, 861 (6th Cir. 1986).

G. ADEA Claim

Although the plaintiff included "age" as one of the bases for her complaint and lists it as an "alternative basis" for the alleged discrimination, see Complaint, at 1 and 7-8, ¶ 10, she does not clearly set out that she is pursuing an age discrimination claim under the ADEA. In contrast, she specifically set out Title VII and Title I as the statutory grounds for her claims. Accordingly, the Court cannot find that the plaintiff has set out a claim under the ADEA in her complaint. Even if the plaintiff properly alleged an ADEA claim, however, her claim would suffer from the same shortcomings that apply to her Title VII claims.

H. Slander/Libel

The plaintiff makes a brief reference to slanderous and libelous comments made by the Defendant. See Docket Entry No. 1, at 1. However, the plaintiff does not specifically set out a cause

of action for slander and/or libel and does not invoke the Court's supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. Accordingly, the Court does not view the plaintiff as having alleged a state law claim for slander and/or libel.

### R E C O M M E N D A T I O N

Accordingly, the Court respectfully RECOMMENDS that;

1) the plaintiff's motion to amend (Docket Entry No. 46) be DENIED;

2) the Defendant's motion for summary judgment (Docket Entry No. 36) be GRANTED; and

3) this action be DISMISSED WITH PREJUDICE.

The Court further RECOMMENDS that any appeal taken of this Report and Recommendation, if adopted by the Court, would not be in good faith under Section 1915(a)(3).

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge